### OLIVER v. NORTHERN PAC. RY. CO.

(District Court, E. D. Washington, N. D.    February 5, 1912.)

#### No. 1,569.

1. MASTER AND SERVANT (§ 88*)—DEATH OF SERVANT—PULLMAN CAR PORTER —EMPLOYER'S LIABILITY ACT—RELEASE—"EMPLOYÉ OF RAILWAY."

Decedent was a porter on a Pullman car owned jointly by defendant railroad company and the Pullman Company, and operated by them as an association under a contract providing that the Pullman Company should have the management thereof, but that all obligations with reference to operation of the cars should be borne by the association, which should furnish each car one or more employés, who at all times should be subject to the rules of the railroad company governing its own employés, that the earnings should be divided in certain proportions, and, in the event of liability arising against the railroad company for personal injuries to an employé of the association, the railroad company should be liable only to the same extent it would be if the person injured were an employé in fact of the railroad company, and for all excess liability the railway company should be indemnified and paid by the owners of the car. Held, that decedent was an employé of the railway company within federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1323), and hence thereunder his personal representatives were not precluded from recovering for his death resulting from the negligence of the railway company by a provision in his contract of employment purporting to release both the Pullman Company and the railway company from such liability.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. DISMISSAL AND NONSUIT (§ 75*)—WITHOUT PREJUDICE.**

Where, at the time of the dismissal of an action to enforce an alleged common-law liability for the death of a railway employé, it was within the discretion of the court to dismiss the entire action without prejudice, it was equally within the court's power to dismiss without prejudice to the commencement of a new action to recover for decedent's death under the federal Employer's Liability Act (April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1323).

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. § 169; Dec. Dig. § 75.*]

**3. COMMERCE (§ 80*)—RAILROADS—EMPLOYER'S LIABILITY ACT—REMEDIES.**

Since the federal Employer's Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1323]), providing a remedy for recovery of damages for injury to and death of railway employés engaged in interstate commerce, supersedes all state laws on the same subject, the personal representatives of such an employé killed in performance of his duty have only one remedy, viz., that provided by the federal act.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 80.*

What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

At Law. Action by Mamie E. Oliver, as administratrix of the estate of John A. Oliver, deceased, as his personal representative for the benefit of herself and minor children, against the Northern Pacific Railway Company. On motion for judgment notwithstanding the verdict for plaintiff. Denied.

Nuzum & Nuzum and W. H. Plummer, for plaintiff.
Edward J. Cannon, for defendant.

RUDKIN, District Judge. On the 4th day of January, 1911, John A. Oliver, a porter in charge of a Pullman car attached to an eastbound passenger train of the defendant company, was killed at Cheney, Wash., by a rear-end collision. On the 18th day of January following his surviving widow and two minor children commenced an action in the state court to recover damages for his death, which was alleged to have been caused through the wrongful act and neglect of the defendant. The case was thereafter removed to this court on the ground of diversity of citizenship, and a trial was had. The sole issue presented at that trial was the construction and validity of the following provision contained in the contract of employment, entered into between the deceased porter and the Pullman Company:

"I will obey all rules and regulations made or to be made for the government of their own employés by the corporations or persons over whose lines of railroad the cars of said the Pullman Company may be operated while I am traveling over said lines in the employment or service of said the Pullman Company; and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations or persons, which rights I do expressly renounce; and I hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge any and all such corporations and persons from all claims for liability of any nature or character whatsoever on account of any personal injury or death to me while in said employment or service."

At the close of the testimony the defendant moved the court to instruct the jury to return a verdict in its favor, and the court intimated that the motion thus interposed should be granted. The plaintiffs thereupon moved the court to dismiss the action without prejudice, and, after discussion, the latter motion was granted, in so far as any right of action under the federal Employers' Liability Act was concerned, the judgment as entered contained the following reservation or saving clause:

"It is hereby ordered, adjudged, and decreed that the plaintiffs have and take nothing by their action herein, and that the defendant have judgment for its costs and disbursements herein, upon the express condition that this judgment shall not be a bar or in any manner interfere with an action subsequently instituted under the federal Employer's Liability Act by the personal representative of John A. Oliver, deceased, for the benefit of his widow, Mamie E. Oliver, and the minor children, Madjie L. and Oracie A. Oliver. * * *

"It is further ordered, adjudged, and decreed that this judgment shall not operate as a bar of an action brought by the personal representatives of the deceased for the recovery of damages for the wrongful death of the deceased brought under and by virtue of the federal Employer's Liability Act of April 22, 1908, but that this judgment shall be a complete bar to any other action growing out of the death of the deceased."

The grounds upon which this judgment was entered are not now material, perhaps, except in so far as the ruling of the court is embodied in the judgment entry, but by way of explanation I might add that the court was then and is still of opinion that there could be no recovery in that case; first, because the action was not prosecuted in the name of the personal representatives as required by the federal Employer's Liability Act; second, because there was no testimony offered at the trial tending to show that the relation of master and servant existed between the deceased porter and the defendant company; and, third, because, independently of the act of Congress, the release set forth in the answer was a full and complete defense to the action.

Thereafter the present action was instituted directly in this court by the personal representative of the deceased to recover damages for his death under the federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1323). The answer again interposed the release to the Pullman Company as a defense, and pleaded the former judgment in bar. At the close of the testimony the defendant again moved the court to direct a verdict in its favor, but it appearing that the right of recovery depended solely upon questions of law, and that the only question for the consideration of the jury in any event was the measure or amount of damages, a ruling on the motion was reserved for future consideration by consent of counsel, and the cause was submitted to the jury. A verdict in favor of the plaintiffs was returned for the sum of $12,500, and the defendant has interposed a motion for judgment notwithstanding the verdict in conformity to the practice prevailing in the local courts. Two questions are presented by this motion: First. Was the deceased porter employed by the defendant company within the mean-

ing of the Employer's Liability Act? Second. Is the former judgment a bar to the present action?

[1] The relations existing between the Railway Company and the Pullman Company in this case, and consequently the relations existing between the Railway Company and the porter on the Pullman car, differ widely from those disclosed in the numerous cases cited in argument, where it was held that a porter on a Pullman car was not an employé of the railroad company over whose tracks the Pullman car was operated. It appears from the testimony that on the 1st day of January, 1897, the defendant company and the Pullman Company were the joint owners of 50 sleeping or Pullman cars. On that day the two companies entered into a contract, which was in force at the time of the accident, whereby it was agreed, among other things, that:

"The cars owned jointly by the Railway Company and the Pullman Company shall be known as Association cars; the Pullman Company having the management thereof; and all obligations of the Pullman Company with respect to the operation of said cars shall be assumed and borne by the Association. * * * The Association shall furnish with each of such sleeping cars, one or more employés, as may be required, whose duties shall be to collect fares from passengers occupying such cars, for the use of seats or berths, and generally to wait upon and provide for the comfort of passengers therein; each employés at all times to be subject to the rules of the railroad company governing its own employés. The Association shall also furnish employés who shall have charge of all the sleeping cars used under this contract."

It was further agreed that from the gross earnings of the Association cars certain operating expenses should be deducted; that, after deducting such operating expenses, the balance should be divided between the Railway Company and the Pullman Company in the proportion of their respective interests in the Association cars; and that whenever the revenue from sales of seats and berths exceeded an average of $6,000 per annum, upon the whole number of Association cars, the Association should pay the Railway Company the amount in excess of $6,000 per annum per car.

It will thus be seen that the Railway Company was the owner of a half interest in the Pullman car upon which the deceased porter was employed, and that the deceased was employed by an Association of which the Railway Company was a part. True, the Pullman Company was the manager for the Association, but in that respect it was simply an agent for the Railway Company. Stripped of matters of mere form, the Railway Company and the Pullman Company operated this car jointly for their joint benefit, and employed the porter jointly. This view of the contract was recognized by the two companies, for at another place in the contract it is expressly provided that: ·

"In the event of any liability arising against the Railway Company for personal injury to any employé of the Association or the Pullman Company, it is hereby agreed that the Railway Company shall be liable only to the same extent it would be if the person injured were an employé in fact of the Railway Company, and for all liability in excess thereof shall be indemnified and paid by the owners of the car."

The porter was undoubtedly an employé of the Association within the meaning of this provision. The question then arises, Is a person

employed jointly by a railway company and another company in the operation and management of a train an employé of the railway company, within the meaning of the Employer's Liability Act? In my opinion this question must be answered in the affirmative. The contract between these two companies was entered into long prior to the passage of the act in question, and was therefore not entered into for the purpose of circumventing or avoiding liabilities imposed by law. Nevertheless, if such a contract is recognized and given the effect claimed for it by the defendant, there is nothing to prevent railway companies from avoiding obligations imposed upon them by this or other laws of Congress. It was attempted in argument to draw a distinction between those positive obligations imposed upon public service corporations by law and obligations voluntarily assumed by them for the comfort and convenience of passengers, and for their own profit. Such a distinction may, and in some cases does, exist, but it cannot be gainsaid that persons employed by railway companies in performing obligations voluntarily assumed are as much employés of the company as those servants who are discharging positive duties imposed by law. Persons employed as the deceased was come within the spirit of the statute, and those dependent on them for support should not be denied the protection it affords.

[2] There is no force in the argument that the former judgment is a bar to this action. At the time the motion to direct a verdict and the motion for a voluntary dismissal were interposed, it was clearly within the power and discretion of the court to dismiss the entire action without prejudice. If it was within the power of the court to dismiss the action without prejudice generally, it was clearly within its power and discretion to dismiss it without prejudice as to a particular action; for the greater power necessarily includes the lesser. Fisk v. Tacoma Smelting Co., 49 Wash. 514, 95 Pac. 1082; Gassman v. Jarvis (C. C.) 94 Fed. 603; Chicago, M. & St. P. Ry. Co. v. Metalstaff, 101 Fed. 769, 41 C. C. A. 669.

[3] Much of the argument of counsel was based upon the theory that the plaintiffs had two remedies, one under the state law and one under the federal law, and were bound by their election to proceed under the state law; but such was not the case. Laws of the United States made in pursuance of the Constitution are the supreme law of the land and supersede all state laws on the same subject. McCullough v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Smith v. Alabama, 124 U. S. 465, 473, 8 Sup. Ct. 564, 31 L. Ed. 508. The plaintiffs therefore had but one remedy, and that under the act of Congress. It was so held in the recent Employer's Liability Cases (just decided). Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. ——.

The first question presented by the motion for judgment is a novel one, and by no means free from difficulty, but I am of opinion that the case is within and controlled by the act of Congress, and that the release of damages for injury or death is against public policy and void.

The motion is therefore denied.